IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARMEN LARSON,

        Plaintiff,

        v.

TILLAMOOK YOUTH AUTHORITY
ACCOUNTABILITY CAMP; STATE OF
OREGON; and ANDY WYATT, TERRY
YOUNKIN, DAVE LINDSTROM, and BRIAN
FLORIPS, each individually and in their official
capacities,

        Defendants.

CV-05-1769-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Carmen Larson ("Larson"), originally filed this action in Multnomah County Circuit Court for the State of Oregon, *Larson v. Tillamook Youth Authority Accountability Camp, et al.*, Civil No. 0509-09147. On November 22, 2005, defendants filed a Notice of Removal of Action Under 28 USC § 1441(b) (docket #1).

1 - FINDINGS AND RECOMMENDATION

Larson alleges that she was constructively terminated from her job as a youth counselor at the Tillamook Youth Authority Accountability Camp ("TYAC") in September 2004, following over a year of sexually harassing behavior by managerial employees at TYAC, including Andy Wyatt ("Wyatt") and Terry Younkin ("Younkin"), and an ineffective response to her complaint by Younkin and two other managers, Dave Lindstrom ("Lindstrom") and Brian Florips ("Florips"). Larson alleges eight claims for relief[1] against the State of Oregon[2] and these individual defendants for: (1) violation of 42 USC § 1983 due to her termination ("First Claim for Relief"), retaliation in violation of the First Amendment to the United States Constitution ("Second Claim for Relief"), and violation of the equal protection clause of the United States Constitution ("Equal Protection Claim"); (2) violation of 42 USC § 2000e-17 due to sexual harassment ("Third Claim for Relief"), sexual discrimination ("Fourth Claim for Relief"), and retaliation ("Fifth Claim for Relief"); (3) wrongful termination ("Sixth Claim for Relief"); and (4) intentional infliction of emotional distress ("IIED Claim").

This court has jurisdiction over Larson's federal statutory claims under 28 USC § 1331 and jurisdiction over her supplemental state law claims pursuant to 28 USC § 1367(c). The

---

[1] Eight claims are alleged in the Complaint, but claims Seven and Eight are misnumbered as the "Tenth Claim for Relief" and the "Twelfth Claim for Relief." Of those, only the former of these claims, alleging intentional infliction of emotional distress, is at issue in the present motion.

[2] Although the TYAC is presently named as an individual defendant, defendants contend that TYAC is not an independent organization, but is instead operated by the Oregon Youth Authority, which is an "arm of the State." Defendants' Reply Memorandum in Support of Partial Motion to Dismiss (docket #10), p. 6, n. 2. No Answer has yet been filed and the parties' agreements on a variety of issues raised in defendants' motion will require Larson to file an amended complaint. For purposes of this motion, this court simply refers to the State of Oregon as the sole entity defendant.

matter before the court is defendants' Partial Motion to Dismiss (docket #2), which asserts a host of defects in the present Complaint. However, Larson has agreed to amend her Complaint to resolve most of the defects, leaving only the issues of whether she provided an adequate tort claims notice pursuant to ORS 30.270 for the state law claims and whether she has sufficiently plead her IIED Claim.

With respect to the tort claims notice, Larson has voluntarily withdrawn her Sixth Claim for Relief, conceding that 42 USC § 1983 precludes a wrongful discharge claim. In addition, defendants have withdrawn their motion that the IIED claim was not properly noticed under the ORS 30.270. As a result, the issue concerning the adequacy of the tort claims notice is rendered moot.

## STANDARDS

In evaluating a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), the court must accept the allegations of material fact as true, and must construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995). A claim should be dismissed only if it appears beyond doubt that the plaintiff can establish no set of facts under which relief could be granted. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F3d 940, 946 (9th Cir 2005).

## DISCUSSION

### I. Legal Standard

A claim for intentional infliction of emotional distress ("IIED") requires a plaintiff to prove that: "(1) defendants intended to inflict severe emotional distress on plaintiffs; (2) defendant's acts were the cause of plaintiff's severe emotional distress; and (3) defendant's

3 - FINDINGS AND RECOMMENDATION

acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *Robinson v. U.S. Bancorp*, 2000 WL 435468, *5 (D Or April 20, 2000), citing *McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841, 849 (1995). It is the role of the court to determine as a matter of law whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct. *Harris v. Pameco Corp.*, 170 Or App 164, 171, 12 P3d 524, 529 (2000). "Conduct that is merely 'rude, boorish, tyrannical, churlish and mean' does not satisfy that standard." *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or App 234, 239, 828 P2d 479, 481, *review denied*, 314 Or 176, 836 P2d 1345 (1992), quoting *Patton v. J.C. Penney Co. Inc.*, 301 Or 117, 124, 719 P2d 854, 858 (1986), *abrogated on other grounds by McGanty*, 321 Or at 544, 901 P2d at 849. Similarly, "[l]ack of foresight, indifference to possible distress, even gross negligence is not enough to support this theory of recovery." *Hall v. The May Dep't Stores Co.*, 292 Or 131, 135, 637 P2d 126, 129 (1981), *abrogated on other grounds by McGanty*, 321 Or at 544, 901 P2d at 849. Instead, [t]he tort requires some extraordinary transgression of the bounds of socially tolerable conduct." *Id*.

Oregon "cases suggest that conduct that is negligent, mistaken, or otherwise remiss rather than deliberate, intentional, or engaged in by design will not support a claim for IIED." *Delaney v. Clifton*, 180 Or App 119, 136, 41 P3d 1099 1110, *review denied*, 334, Or 631, 54 P3d 1041 (2002) (citations omitted).

## II. **Allegations of the Complaint**

At this juncture, this court accepts as true the following allegations in the Complaint:

TYAC employed Larson as a youth counselor. Complaint, ¶ 11. Wyatt, Younkin, Lindstrom, and Florips were individual managers and supervisors employed by TYAC. *Id*, ¶¶ 8

4 - FINDINGS AND RECOMMENDATION

& 9. From about June 2003, until the time Larson was constructively terminated on September 22, 2004, Wyatt subjected her and other female employees to sexually explicit comments, sexual innuendo, and sexually suggestive gestures and movements. *Id*, ¶ 12. Younkin "participated in some of the harassing conduct." *Id*. The work environment was "permeated [with] sexual content, including a coworker's showing his erect penis on his cell phone camera." *Id*, ¶ 13.

Despite repeated complaints to Younkin, Lindstrom, and Florips, the conduct continued, and Wyatt then took retaliatory actions against Larson, including denying Larson's requests for time off and yelling at her. *Id*, ¶¶ 14-16. Defendants took no action to stop the sexual harassment, instead offering Larson "unrealistic, demeaning, and ineffective solutions, knowing them to be such." *Id*, ¶¶ 15 & 17. Finally, Larson alleges that defendants' acts were done "intentionally with an improper, abusive, and discriminatory motive." *Id*, ¶ 40.

## III. Analysis

### A. Intent

In order to satisfy the intent requirement of an IIED claim, Larson must show either that defendants: (1) desired to inflict severe emotional distress; or (2) knew that such distress was certain or substantially certain to result from its volitional acts but nevertheless went ahead. *Babick v. Oregon Arena Corp.*, 333 Or 401, 411, 40 P3d 1059, 1064 (2002) (clarifying *McGanty* and rejecting argument that intent element requires proof of both purpose and knowledge).

#### 1. State of Oregon

Because her IIED Claim is alleged against all defendants without specifying a particular entity or particular individual defendants, this court assumes she brings her claims against all four individual defendants, as well as against their employer, the State of Oregon. In order to

5 - FINDINGS AND RECOMMENDATION

hold an employer vicariously liable, the employee's conduct must have occurred within the course and scope of employment, an inquiry that involves the following elements:

> (1) [W]hether the act occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated, at least partially, by a purpose to serve the employer; and (3) whether the act is of a kind which the employee was hired to perform.

*Lathrope-Olsen v. Oregon Dep't of Transp.,* 128 Or App 405, 408, 876 P2d 345, 346, quoting *Chesterman v. Barmon*, 305 Or 439, 442, 753 P2d 404, 406 (1988).

In *Ballinger v. Klamath Pac. Corp.*, 135 Or App 438, 456, 898 P2d 232, 243, *review denied*, 322 Or 360, 907 P2d 247 (1995), the Oregon Court of Appeals stated that "workplace sexual harassment that results in IIED and battery is motivated by purely 'personal' desires that are unrelated to serving one's employer." However, that pronouncement is followed by citations to two conflicting cases, *Mains v. II Morrow, Inc.*, 128 Or App 625, 877 P2d 88 (1994) and *Carr v. US West Direct Co.*, 98 Or App 30, 36, 779 P2d 154, *review denied*, 308 Or 608, 784 P2d 1101 (1989).

*Carr* involved sexual harassment and rape of the plaintiff by her supervisor. The court granted summary judgment to the employer on the basis that there was "no indication that the employment was even remotely the cause of his conduct." *Carr*, 98 Or App at 36, 779 P2d at 157. Indeed, the rape of a subordinate employee could hardly be motivated by a desire to serve the employer's interests.

However, the second case cited by *Ballinger* demonstrates that under some circumstances a supervisor's harassment can be viewed as motivated at least partially by a purpose to serve the employer. *Mains* reversed a grant of summary judgment for the employer on the basis that "a

6 - FINDINGS AND RECOMMENDATION

factfinder could infer from the record that sexual harassment was a characteristic of [the supervisor's] method of supervising and controlling female subordinate employees in the workplace, and that defendant condoned this supervisory technique." *Mains*, 128 Or App at 633, 877 P2d at 92. Similarly, in *Whelan v. Albertson's*, 129 Or App 501, 879 P2d 888 (1994), the court held that plaintiff stated a claim against the employer for vicarious liability by alleging that the supervisory employee purposely humiliated plaintiff "as a technique to increase his effectiveness as a supervisor [and] improve the morale of other employees." *Id* at 508, 879 P2d at 893.

Larson's Complaint does not specify how the conduct of the individual defendants was motivated at least partially by a purpose to serve their employer, the State of Oregon. Thus, at present, there is no basis to find that Larson's allegations against the State of Oregon fall closer to *Carr* than to *Mains* and *Whelan*. Because this court must construe the allegations in the light most favorable to Larson, this court will assume for purposes of this motion that the harassment by the individual defendants was motivated at least partially to serve the State of Oregon.

### 2. Individual Defendants

Larson alleges that defendants' acts "were done intentionally with an improper, abusive and discriminatory motive." Complaint, ¶ 40. This allegation is sufficient to satisfy the intent requirement with respect to the individual defendants.

### B. Cause of Severe Emotional Distress

The second element of an IIED claim is causation. Larson alleges that defendants acted "intentionally to cause [her] severe emotional harm or under circumstances in which it was

factfinder could infer from the record that sexual harassment was a characteristic of [the supervisor's] method of supervising and controlling female subordinate employees in the workplace, and that defendant condoned this supervisory technique." *Mains*, 128 Or App at 633, 877 P2d at 92. Similarly, in *Whelan v. Albertson's*, 129 Or App 501, 879 P2d 888 (1994), the court held that plaintiff stated a claim against the employer for vicarious liability by alleging that the supervisory employee purposely humiliated plaintiff "as a technique to increase his effectiveness as a supervisor [and] improve the morale of other employees." *Id* at 508, 879 P2d at 893.

Larson's Complaint does not specify how the conduct of the individual defendants was motivated at least partially by a purpose to serve their employer, the State of Oregon. Thus, at present, there is no basis to find that Larson's allegations against the State of Oregon fall closer to *Carr* than to *Mains* and *Whelan*. Because this court must construe the allegations in the light most favorable to Larson, this court will assume for purposes of this motion that the harassment by the individual defendants was motivated at least partially to serve the State of Oregon.

### 2. Individual Defendants

Larson alleges that defendants' acts "were done intentionally with an improper, abusive and discriminatory motive." Complaint, ¶ 40. This allegation is sufficient to satisfy the intent requirement with respect to the individual defendants.

### B. Cause of Severe Emotional Distress

The second element of an IIED claim is causation. Larson alleges that defendants acted "intentionally to cause [her] severe emotional harm or under circumstances in which it was

substantially certain she would suffer such harm. *Id*, ¶ 39. This allegation is sufficient to clear the second hurdle necessary to Larson's *prima facie* case of IIED.

///

### C. Socially Tolerable Conduct

It is a question of law for the court to determine whether a complaint sufficiently alleges conduct that constitutes an extraordinary transgression of the bounds of socially tolerable conduct. *Babick v. Oregon Arena Corp.*, 160 Or App 140, 150, 980 P2d 1147, 1153 (1999), *rev'd in part on other grounds*, 333 Or 401, 40 P3d 1059 (2002). The IIED claim does not specifically allege that defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. Even assuming it was alleged, the factual allegations accompanying Larson's IIED claim are presently insufficient to support this claim.

In essence, Larson alleges that she was subjected to sexually harassing conduct by Wyatt and Younkin, that three managerial employees including Younkin intentionally ignored her complaints or offered her unworkable solutions, and that the harassment continued for over a year when she felt she had no alternative but to quit. Other than these generalized allegations about sexually harassing behavior and a hostile work environment permeated by sexually offensive content, Larson specifically alleges only that a "co-worker" showed her his erect penis on his cell phone camera and that Wyatt retaliated against her for complaining by refusing her requests for time off, unreasonably supervising her, and yelling at her. Complaint, ¶¶ 13 & 16. No specific allegations are made against either Lindstrom or Florips, and the only allegation against Younkin is that he "participated in some of the harassing conduct." *Id*, ¶ 12. A review of Oregon case law suggests that these allegations are insufficient.

8 - FINDINGS AND RECOMMENDATION

Allegations of increased and unreasonable supervision are plainly insufficient to carry the day. "Excessive supervision and unjustified reprimands, even if proved, cannot amount to an 'extraordinary transgression of the bounds of socially tolerable conduct.'" *Snyder v. Sunshine Dairy*, 87 Or App 215, 218, 742 P2d 57, 57 (1987) (citations omitted). Thus, Larson's allegations that Wyatt subjecting her to "increased and unreasonable supervision" will not suffice for her IIED claim. Complaint, ¶ 16.

Larson also alleges that a "co-worker" showed her an image of his erect penis on his cell phone camera. However, even assuming that this type of conduct might be sufficient to cross over into the bounds of socially intolerable conduct, the "co-worker" is not identified as one of the defendants, and nothing in the Complaint suggests that the State of Oregon commanded or expressly authorized that action. Thus, this allegation, while explicit regarding the content of the conduct to which Larson was subjected, does not bear a sufficient relationship to any of the named defendants to support an IIED claim against any of them.

The remaining allegations are that Wyatt subjected Larson and other female employees to "ongoing unwelcome sexually explicit comments, sexual innuendo, and sexually suggestive gestures and movements," denied Larson's requests for time off, and yelled at her. Complaint, ¶¶ 12 & 16. Under Oregon law, these allegations do not constitute an extraordinary transgression of the bounds of socially tolerable conduct.

Oregon appellate courts hesitate to impose liability for IIED claims in employment settings, even in the face of serious employer misconduct. *Madani v. Kendall Ford Inc.*, 312 Or 198, 205-06, 818 P2d 930, 934 (1991), *abrogated on other grounds by McGanty*, 321 Or at 544, 901 P2d at 849; *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 733 P2d 430 (1987); *Patton*,

9 - FINDINGS AND RECOMMENDATION

301 Or at 122-24, 719 P2d at 857-58; *Watte*, 112 Or App at 237-38, 828 P2d at 481; *Snyder*, 87 Or App at 218, 742 P2d at 57. For example, in *Lewis*, 302 Or at 618-19, 733 P2d at 431, a supervisor (who was also the owner's son) repeatedly harassed an employee who refused to continue dating him. The son told other employees that plaintiff had given him a venereal disease. While at work, he swore at her, called her a whore, searched her personal belongings, threw things at her, slammed a door which struck plaintiff, and even followed plaintiff to her car, demanded a ride home, and engaged in fisticuffs with several passers-by who attempted to pull him away from her. The employee complained to the owner on at least two occasions, but the abuse continued. Finally, the owner suggested it might be better if the employee found another job. Plaintiff filed suit against the owner and the business, seeking damages for IIED. The Oregon Supreme Court unanimously upheld a directed verdict for defendant. Neither the underlying conduct, nor the owner's failure to respond to the problem, were deemed sufficiently outrageous as to state a claim for IIED under Oregon law.

However, more recent IIED claims against employers have been allowed when the conduct amounted to illegal sexual and racial discrimination. *Palmer v. Bi-Mart Co., Inc.,* 92 Or App 470, 758 P2d 888 (1988), held that an IIED claim was not barred by Oregon's worker's compensation statute. The female plaintiff alleged that for about six months, her male supervisor engaged in a course of sexual harassment verbally and through notes, including notes with abusive and sexually explicit wording. Reversing the grant of summary judgment to the defendants by the trial court, the Court of Appeals said nothing about these allegations being insufficient to state an IIED claim.

*Lathrope-Olson* involved much more egregious conduct. Lathrope-Olson was a Native American woman whose supervisor on a highway crew called her "squaw," told her that a "squaw" was supposed to "walk behind her man," and stated that "all [that] women were good for was between their legs." *Lathrope-Olson*, 128 Or App at 407, 876 P2d at 346. The supervisor threatened to push Lathrope-Olson into the path of oncoming vehicles and repeatedly locked her out of the crew van when it was raining or snowing. Denying defendant's motion for summary judgment, the court explained: "Such overt acts of racism and sexual harassment are not simply rude and boorish, but are more properly characterized as the kind of conduct that a jury could find was intended to inflict deep, stigmatizing and psychic wounds on another person." *Id* at 408, 876 P2d at 347.

In *Whelan*, the plaintiff, a male security guard, was subjected to repeated taunts of "queer" and "Serge" (after an effeminate character in the film "Beverly Hills Cop") in front of customers and co-workers. *Whelan*, 129 Or App at 503, 879 P2d at 890. Although plaintiff repeatedly told his harassers that he was not a homosexual and that their conduct and comments were offensive, the ridicule continued and led other employees and the public to believe that plaintiff was a homosexual. The court declined to dismiss the IIED claim because the repetition of the taunts "in the presence of customers and co-workers, especially in the light of plaintiff's work, weighs in favor of holding that a reasonable jury could find that they were socially intolerable." *Id* at 505, 879 P2d at 891.

In *Harris*, the Oregon Court of Appeals held that the trial court erred in dismissing an IIED claim by a male plaintiff against his male supervisor based upon unwelcome touching of intimate parts of his body and sexual and hostile comments that spanned over a year. *Harris*, 170

11 - FINDINGS AND RECOMMENDATION

Or App at 170-71, 12 P3d at 529-30. The male supervisor began directing this harassing conduct at plaintiff only after discovering that the plaintiff believed such conduct to be offensive and contrary to his religious and moral values.

///

Larson alleges ongoing sexual harassment spanning a 15-month period, yet her Complaint identifies no specific act or category of acts taken by any of the defendants which would tend to place this case among those cases allowing an IIED claim to proceed. Although she may well be able to make such an allegation in good faith, she alleges no unwelcome touching, no abusive verbal or written conduct directed at her by any particular defendant, no threats of physical harm or repetitive verbal taunting, or any other specific allegations that can be categorized as falling outside the bounds of socially tolerable conduct. Instead, she relies on conclusory allegations about a course of conduct apparently primarily directed at her by Wyatt.

Larson need not identify each and every act which she alleges places her allegations in the realm of conduct which would be sufficient for an IIED claim. Nonetheless, she must at least give sufficient information as to the content and context of the conduct in order to proceed on this claim. Accordingly, as presently pled, the IIED Claim should be dismissed, with leave granted to Larson to replead to cure these defects.

///
///
///
///

12 - FINDINGS AND RECOMMENDATION

///

///

///

///

///

## RECOMMENDATION

For the reasons stated above, defendants' Partial Motion to Dismiss (docket #2) should be GRANTED to the extent that the IIED Claim (presently numbered as the "Tenth Claim for Relief") should be dismissed without prejudice and DENIED AS MOOT in all other respects. No later than 10 days after entry of an Order adopting this Findings and Recommendation by a district court judge, Larson should be allowed to file a First Amended Complaint to cure the defects with respect to the IIED claim and, as agreed by Larson, to:

(1) More specifically designate which claims are against which defendant(s), including;

    (a) Naming only the individual defendants on the § 1983 claims; and

    (b) Naming only the employing entity on the Title VII claims;

(3) Deleting the wrongful discharge claim;

(4) Deleting requests for punitive damages on the Title VII claims; and

(5) Deleting the request for expert witness fees under ORS 20.107.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due **January 27, 2006.** If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 6th day of January, 2006.

                                                              \_\_/s/ Janice M. Stewart _____
                                                              Janice M. Stewart
                                                              United States Magistrate Judge