IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARMEN LARSON,

                Plaintiff,                CV-05-1769-ST

     v.                              FINDINGS AND
                                                RECOMMENDATION
TILLAMOOK YOUTH AUTHORITY
ACCOUNTABILITY CAMP; STATE OF
OREGON; and ANDY WYATT, TERRY
YOUNKIN, DAVE LINDSTROM, and BRIAN
FLORIPS, each individually and in their official
capacities,

                Defendants.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Carmen Larson ("Larson"), originally filed this action in Multnomah County Circuit Court for the State of Oregon, *Larson v. Tillamook Youth Authority Accountability Camp, et al.*, Civil No. 0509-09147. Larson alleges that she was constructively terminated from her job as a youth counselor at the Tillamook Youth Authority Accountability Camp ("TYAAC") in

1 - FINDINGS AND RECOMMENDATION

September 2004, following over a year of sexually harassing behavior by managerial employees at TYAAC, including Andy Wyatt ("Wyatt") and Terry Younkin ("Younkin"), and an ineffective response to her complaint by Younkin and two other managers, Dave Lindstrom ("Lindstrom") and Brian Florips ("Florips").  In her original Complaint in this action, Larson alleged eight claims for relief against the State of Oregon, TYAAC, and these individual defendants for:

> (1) violation of 42 USC § 1983 due to her termination, retaliation in violation of the First Amendment to the United States Constitution, and violation of the equal protection clause of the United States Constitution;
>
> (2) violation of 42 USC § 2000e-17 due to sexual harassment, sexual discrimination, and retaliation;
>
> (3) wrongful termination; and
>
> (4) intentional infliction of emotional distress ("IIED").

On November 22, 2005, five of the six defendants filed a Notice of Removal of Action Under 28 USC § 1441(b) (docket #1).[1]  This court has jurisdiction over Larson's federal statutory claims under 28 USC § 1331.[2]

On February 10, 2006, this court dismissed the IIED claim without prejudice and allowed Larson leave to replead to cure the defects in that claim and other pleading problems, namely to:

---

[1] Andy Wyatt did not join in the Notice of Removal and is represented by a different attorney than the other defendants.

[2] Although this court previously noted that it had jurisdiction over Larson's supplemental state law claims under 28 USC § 1367(c), it appears that this court does not have jurisdiction over any such claim brought against the State of Oregon or its agencies absent a waiver of sovereign immunity.  *See Stanley v. Trustees of California State Univ.*, 433 F3d 1129, 1133-34 (9th Cir 2006) ("[W]e hold that 28 U.S.C. § 1367 does not abrogate state sovereign immunity for supplemental state law claims.").

2 - FINDINGS AND RECOMMENDATION

(1) specifically designate which claims were against which defendant(s), including; (a) naming only the individual defendants on the § 1983 claims; and (b) naming only the employer on the Title VII claims; (3) deleting the wrongful discharge claim; (4) deleting requests for punitive damages on the Title VII claims; and (5) deleting the request for expert witness fees under ORS 20.107.  Findings and Recommendation (docket #13), adopted by Order (docket #20).

Larson filed a First Amended Complaint on January 25, 2006 (docket #14) curing most of the defects, but still alleging a claim against TYAAC and the State of Oregon for violation § 1983 due to her termination (First Claim for Relief).  In response, all defendants except Wyatt filed a Partial Motion to Dismiss the First Amended Complaint (docket #16), in which they seek dismissal of Larson's First Claim for Relief under § 1983 against the TYAAC and the State of Oregon and the Sixth Claim for Relief for IIED against all defendants.

For the reasons that follow, defendants' Partial Motion to Dismiss the First Amended Complaint (docket #16) should be granted with leave: (1) to replead the First Claim for Relief to allege a claim against the individual defendant(s) for a due process violation under § 1983; and (2) to reinstate her claim for wrongful termination.

## DISCUSSION

### I. Legal Standard

In evaluating a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), the court must accept the allegations of material fact as true, and must construe those allegations in the light most favorable to the non-moving party.  *Parks Sch. of Bus. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995).  A claim should be dismissed only if it appears beyond doubt that the

plaintiff can establish no set of facts under which relief could be granted. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F3d 940, 946 (9th Cir 2005).

## II. Allegations

This court accepts as true the following allegations in the First Amended Complaint:

TYAAC employed Larson as a youth counselor. First Amended Complaint, ¶ 11. Wyatt, Younkin, Lindstrom, and Florips were individual managers and supervisors employed by TYAAC. *Id*, ¶¶ 8 & 9. Beginning in June 2003, Wyatt subjected Larson and other female employees to sexually explicit comments, sexual innuendo, and sexually suggestive gestures and movements. *Id*, ¶ 12. Younkin "participated in some of the harassing conduct." *Id*. Wyatt made comments such as "I know you think I'm hot. I know you want my body." *Id*, ¶ 13. On one occasion when he was with Larson, Wyatt commented that if a certain coworker "walks by again, I'm going to have to have fellatio." *Id*. The work environment was "permeated [with] sexual content, including a coworker's showing his erect penis on his cell phone camera." *Id*, ¶ 18.

By early January 2004, Wyatt had started shutting his office door when Larson was in his office, and then talking about sex and about having sex. *Id*, ¶ 14. Larson reported Wyatt's behavior to both Younkin and Lindstrom, who agreed that Wyatt was "kind of sick," had "sexual problems," and was a "horny guy," whom they did not doubt was a "pervert," but otherwise took no action to address Wyatt's behavior. *Id*, ¶¶ 14-16.

Wyatt's comments about how "hot" he was and how much women wanted him continued throughout the spring of 2004. *Id*, ¶ 17. In April 2004, during a conversation with Larson,

Wyatt pointed toward his western belt buckle, thrust his pelvis in a sexually suggestive manner, and asked Larson to proclaim that his was "bigger" than her husband's. *Id*.

In about June 2004, Larson again approached Younkin to report Wyatt's sexual harassment. *Id*, ¶ 19. Younkin told her to write the information down and hold on to it "just in case" he needed it. *Id*. Rather than taking action to stop Wyatt's behavior, defendants had Larson escorted off the job site on June 24, 2004.³ *Id*, ¶ 21.

Despite repeated complaints to managers about Wyatt's sexually offensive and harassing behavior, the conduct continued. Wyatt then took retaliatory actions against Larson, including denying Larson's requests for time off, subjecting Larson to increased and unreasonable supervision, and frequently yelling at her. *Id*, ¶ 22. Defendants took no action to stop the sexual harassment, instead offering Larson "unrealistic, demeaning, and ineffective solutions, knowing them to be such." *Id*, ¶ 23.

On September 22, 2004, Larson left her employment with TYAAC after concluding that the harassment would not end, that management did not take the hostile work environment seriously, and that Wyatt and Younkin would continue to harass and retaliate against her.

### III.  Analysis

Defendants seek to dismiss the First and Sixth Claims for Relief and oppose any attempt by Larson to reallege her claim for wrongful termination.

####    A.  **First Claim for Relief: Constructive Discharge Claim Under § 1983**

---

³ No details concerning this incident are provided in the pleadings. However, in the Complaint Larson filed with the Oregon Bureau of Labor and Industries, she alleges that she was "escorted off of the . . . premises after making another complaint about harassment in the workplace." Declaration of Charese A. Rohny (docket #8), Ex A, p. 3.

As presently pled, the First Claim for Relief alleges a claim under § 1983 for "Termination" against the TYAAC and the State of Oregon.[4]  Section 1983 provides a remedy against "every person . . . who causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws . . . ."

The Supreme Court has determined that § 1983 "provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 US 58, 66 (1989).  Therefore, Larson cannot state a claim under § 1983 against the State of Oregon.

Nor can a suit under § 1983 proceed against a State agency.  "State agencies . . . are not 'persons' within the meaning of § 1983, and are therefore not amenable to suit under that statute."  *Maldonado v. Harris*, 370 F3d 945, 951 (9th Cir 2004), *cert denied*, 125 S Ct 1725 (2005).  The pleadings do not presently identify the exact nature of the TYAAC.  However, defendants assert that the TYAAC is really the Oregon Youth Authority, an agency of the State of Oregon.  Oregon statutes seem to support this assertion.  *See* ORS 420A.010 (establishing Oregon Youth Authority) and ORS 420A.145(1) (authorizing the Oregon Youth Authority to establish and operate regional "youth accountability camps").  If so, then the First Claim for Relief is improperly pled and must be dismissed on that basis alone.

This same principle extends to officials acting in their official capacities.  "A state and its officials acting in their official capacities are not considered 'persons' within the meaning of

---

[4] The First Amended Complaint realleges Larson's other claims under § 1983 (the Second Claim for Relief for violation of the First Amendment and the Seventh Claim for Relief for violation of her right to equal protection) only against the individual defendants.

§ 1983." *Bank of Lake Tahoe v. Bank of America*, 318 F3d 914, 918 (9th Cir 2003) (citations omitted). Thus, if at all, Larson must allege her claims under § 1983 against individual defendants in their individual capacities. Because she has not done so, her First Claim for Relief is defective.

Defendants also contend that the First Claim for Relief is an improper attempt to constitutionalize a wrongful termination claim. In response, Larson clarifies that the First Claim for Relief is intended to state a violation of her right to procedural due process against her employer, and she seeks leave to amend to expressly allege that intent. In the event this court does not allow such an amendment, Larson seeks to reinstate the wrongful termination claim she previously withdrew.

Defendants argue that Larson's request to amend her § 1983 claim should be denied because: (1) it would allow her to assert an entirely new claim; and (2) her allegations are insufficient to support a finding that she was constructively discharged, which will be required to support any such claim. This court disagrees with defendants' first argument and finds the second argument to be premature.

Larson is not asserting an entirely new claim. The thrust of Larson's original Complaint is that, in retaliation for her complaints about sexual harassment, defendants retaliated against her and made her work life sufficiently intolerable that she was forced to resign. A constructive discharge may form the basis for a claim for a due process violation if: (1) a reasonable person in the plaintiff's position would have believed that she was forced to quit because of intolerable working conditions; and (2) defendants created the intolerable working conditions in order to avoid affording the plaintiff meaningful and adequate pretermination hearing procedures.

7 - FINDINGS AND RECOMMENDATION

*Fowler v. Carrollton Pub. Library*, 799 F2d 976, 981 (5th Cir 1986) (constructive discharge can support § 1983 due process claim when it "amounts to a forced discharge to avoid pretermination hearing procedures").

The problem with the First Claim for Relief in the First Amended Complaint is that it fails to specifically allege that defendants' actions were motivated by a desire to avoid any applicable pretermination procedures. As a result, her present allegations are insufficient to support this particular claim. However, at this juncture, this court is unwilling to foreclose Larson from alleging this claim. Although not a model of clarity, Larson did allege a violation of "federally protected rights" (First Amended Complaint, ¶ 31) in connection with her termination. If it is her intent to do so, and if she indeed has the requisite evidentiary support (including evidence that defendants' intent was to force her to resign to avoid providing her with adequate pretermination procedures), then this court can discern no prejudice to allowing this amendment at this early stage. Larson is cautioned, however, that a due process claim under § 1983 premised upon a constructive discharge will survive only if the facts support the kind of findings envisioned in *Fowler*.

Accordingly, this court concludes that defendants' request for dismissal of the First Claim for Relief should be granted, but with leave granted to Larson to replead that claim to allege a claim for a due process violation against the individual defendant(s).

### B. Reinstatement of the Wrongful Termination Claim

Larson also requests that if she is not allowed to amend to expressly allege a due process violation in her First Claim for Relief, then she should be allowed to reallege her claim for wrongful termination that she previously withdrew. As discussed above, this court finds that

8 - FINDINGS AND RECOMMENDATION

Larson should be granted leave to replead her First Claim for Relief to allege a claim against the individual defendant(s) for violation of her due process rights. However, Larson has repeatedly indicated that she seeks to allege a claim against her employer (as opposed to any individual defendant) with respect to her termination. As discussed above, a § 1983 claim against her employer is not available to her. Therefore, her request to reinstate a claim for wrongful termination against her employer is not rendered moot by a § 1983 claim.

Defendants argue that Larson's request should be denied because: (1) the State of Oregon is the only proper defendant to that claim and is entitled to sovereign immunity from the wrongful discharge claim; and (2) even if the State of Oregon is not immune, (a) such an amendment would be a breach of the parties' agreement; (b) the claim is precluded due to the availability of adequate statutory remedies; and (c) Larson has not complied with the notice requirements of ORS 30.275.

Defendants are correct that Larson's employer is the only proper defendant with regard to the wrongful discharge claim. "The employment relationship is a necessary element of the tort and establishes the duty of the employer on behalf of the employee not to violate an established public policy. That relationship does not exist among fellow employees." *Schram v. Albertson's, Inc.*, 146 Or App 415, 426, 934 P2d 483, 490-91 (1997). Thus, to the degree the wrongful discharge claim alleged in the original Complaint is alleged against parties other than Larson's employer, no reinstatement should be allowed.

This court is mystified at defendants' assertion that the reinstatement of the wrongful termination claim would be a breach of an agreement between the parties. Larson voluntarily withdrew that claim based on her apparent belief that the § 1983 claim alleged in her original

9 - FINDINGS AND RECOMMENDATION

Complaint precluded her wrongful discharge claim.  Plaintiff's Response to Defendants' Rule 12 Motions to Dismiss Portions of Plaintiff's Complaint (docket #7), p. 3.  In both the original Complaint and First Amended Complaint, the First Claim for Relief was brought against the State of Oregon and the TYAAC.  As discussed above, those defendants are not amenable to suit under § 1983.  There is no reason to think that Larson would have voluntarily withdrawn her wrongful termination claim had she understood that she would not be able to allege her First Claim for Relief against her employer.

This court rejects defendants' suggestion that reinstatement of the wrongful termination claim should be denied due to sovereign immunity.  Several courts, including a judge in this district, have held that a state "waives its Eleventh Amendment immunity when it removes a case from state to federal court."  *Biberdorf v. State of Oregon*, 2002 WL 31455734, * 2 (D Or Feb. 6, 2002), citing *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F3d 1226 (10th Cir 1999); *Newfield House, Inc. v. Mass. Dep't of Public Welfare*, 651 F2d 32, 36 n3 (1st Cir 1981) (*en banc*), *cert denied*, 454 US 1114 (1981).  In *Biberdorf*, Judge Brown found the actions of the State of Oregon in consenting to removal and later failing to raise the issue of sovereign immunity in its Motion for Judgment on the Pleadings inconsistent with an intent to preserve its immunity.  *Biberdorf*, 2002 WL 31455734 at *2-3.  In this case, the State of Oregon removed this action to federal court and on the same day filed a Motion to Dismiss (docket #2), raising various issues but not mentioning sovereign immunity.  As did the court in *Biberdorf*, this court concludes that these actions are inconsistent with an intent to preserve sovereign immunity from the state law claims.  Accordingly, this court concludes that the reinstatement of the wrongful termination claim is not precluded by the Eleventh Amendment.

Defendants also assert that Larson's bid for reinstatement of her wrongful termination claim should be denied due to the presence of adequate statutory remedies. The basis of Larson's wrongful termination claim is that in response to her complaints about sexual harassment, her supervisors knowingly offered unrealistic, demeaning, and ineffective solutions (First Amended Complaint, ¶ 17) and Wyatt retaliated by refusing her requests for time off, subjecting her to increased and unreasonable supervision, and yelling at her (*id*, ¶ 16), in effect forcing her to resign by subjecting her to intolerable working conditions. In short, the thrust of Larson's wrongful termination claim is that in retaliation for resisting illegal and discriminatory conduct, she was subjected to retaliatory actions so intolerable that she was forced to quit. *Id*, ¶¶ 36-37.

This court has previously determined that neither Title VII nor the statutory remedy available for violating ORS 659A.030 are adequate to protect employees from a wrongful discharge caused by resisting employment discrimination. *Paugh v. King Henry's, Inc.*, 2005 WL 1565112, *8-9 (D Or June 30, 2005). Defendants offer no persuasive reason to revisit that decision. Thus, Larson's request to reinstate her claim for wrongful termination should not be denied based on another adequate federal or state statutory remedy.

Finally, defendants argue that Larson should not be allowed to reinstate her wrongful termination claim because she failed to satisfy the notice requirements of ORS 30.275 which requires service of a tort claim notice as a "'condition precedent to recovery under the Oregon Tort Claims Act.'" *Beaver v. Pelett*, 299 Or 664, 671, 705 P2d 1149, 1152 (1985), quoting *Urban Renewal Agency of City of Coos Bay v. Lackey*, 275 Or 35, 40, 549 P2d 657, 660 (1976). Defendants contend that Larson's tort claims notice sent in early August 2004 cannot satisfy

11 - FINDINGS AND RECOMMENDATION

notice of her claim for a claim of constructive discharge which took place several weeks later. Larson counters that the notice requirements were satisfied because her employer was on notice of her claim and, in any event, received actual notice with the filing of her complaint with the Oregon Bureau of Labor and Industries ("BOLI").

The available documents in the record indicate that on August 5, 2004, Larson's attorney sent a Tort Claims Notice to the Oregon Department of Administrative Services, Tillamook County Risk Management, and County Counsel for Tillamook County. Affidavit of Marc Abrams in Support of Partial Motion to Dismiss (docket #3) ("Abrams Aff"), Ex A, p. 1. That letter specifies that Larson was being subjected to "[o]n-going tortious conduct starting on or about February 13, 2004," involving "[s]exual harassment, hostile work environment and discrimination in the terms and conditions of her employment," and that she intended to "pursue claims against all responsible parties for violations of law" and seek damages including "[e]motional distress, lost wages and benefits to be determined at the time of trial, plus reasonable and necessary attorney fees." *Id* at 1-2.[5]

On September 22, 2004, Larson left her employment with TYAAC, allegedly due to the intolerable working conditions resulting in her constructive discharge. First Amended Complaint, ¶ 24. On December 3, 2004, Larson filed a Complaint with BOLI, alleging that she had been subjected to sexual harassment and "eventually to a wrongful (constructive) discharge of her employment." Declaration of Charese A. Rohny (docket #8), Ex A. The Oregon Youth Authority was on notice of that complaint no later than December 15, 2004, and filed a response

---

[5] The First Amended Complaint (docket #14) does not attach a copy of any documents. However, no party has disputed the authenticity of the copies of the documents previously submitted in connection with the first motion to dismiss filed in this case. This court has reviewed those documents in order to fully understand the history of this case.

on February 7, 2005. *Id*, Exs B & C. The response specifically asserted that Larson's "retaliation and constructive discharge claims are without merit." *Id*, Ex C, p. 1.

Actual notice satisfies the requirements of ORS 30.275(6). Such "actual notice" is a communication that:

> (1) allows the recipient to acquire actual knowledge of the time, place and circumstances that give rise to the specific claim or claims that the plaintiff ultimately asserts; and (2) would lead a reasonable person to conclude that the plaintiff has a general intent to assert a claim.

*Flug v. Univ. of Oregon*, 335 Or 540, 554, 73 P3d 917, 924 (2003) (internal quote marks and emphasis omitted); *see also*, *Reyna v. City of Portland*, 2005 WL 708344, *3-4 (D Or March 28, 2005) (discussing tort claim notice in context of continuing tort); *Friday v. City of Portland*, 2005 WL 189717, *6 (D Or Jan. 26, 2005) (finding tort claim notice requirement satisfied by "[plaintiff's] BOLI complaint, together with the City's ensuing investigation").

This court concludes that Larson provided actual notice of her claims to satisfy the requirements of ORS 30.275. Her letter specifically indicates that she intends to "pursue claims" and seek damages, including lost wages which would only accrue if she lost her employment. It also states that the incident in question involves "[o]n-going tortious conduct starting on or about February 13, 2004." Abrams Aff, Ex A, p. 1. That same on-going tortious conduct allegedly resulted in her constructive discharge. Both her subsequently filed BOLI complaint and the response by the Oregon Youth Authority specifically reference constructive discharge claims. Larson's request to replead to reassert her claim for wrongful discharge should not be denied for failure to serve notice of a tort claim.

Accordingly, she should be granted leave to reinstate her wrongful discharge claim. However, Larson must incorporate allegations that she has satisfied any conditions precedent, such as compliance with the tort claim notice requirements of ORS 30.275.

///

///

### B. Sixth Claim for Relief:  IIED Claim Against All Defendants

#### 1. Legal Standard

A claim for intentional infliction of emotional distress ("IIED") requires a plaintiff to prove that: (1) defendant intended to inflict severe emotional distress on plaintiffs; (2) defendant's acts were the cause of plaintiff's severe emotional distress; and (3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841, 849 (1995).  It is the role of the court to determine as a matter of law whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct.  *Babick v. Oregon Arena Corp.*, 160 Or App 140, 150, 980 P2d 1147, 1153 (1999), *rev'd in part on other grounds*, 333 Or 401, 40 P3d 1059 (2002); *Harris v. Pameco Corp.*, 170 Or App 164, 171, 12 P3d 524, 529 (2000).

"Conduct that is merely 'rude, boorish, tyrannical, churlish and mean' does not satisfy that standard."  *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or App 234, 239, 828 P2d 479, 481, *review denied*, 314 Or 176, 836 P2d 1345 (1992), quoting *Patton v. J.C. Penney Co. Inc.*, 301 Or 117, 124, 719 P2d 854, 858 (1986), *abrogated on other grounds by McGanty*, 321 Or at 544, 901 P2d at 849.  Similarly, "[l]ack of foresight, indifference to possible distress, even gross negligence is not enough to support this theory of recovery." *Hall v. The May Dep't Stores Co.*,

292 Or 131, 135, 637 P2d 126, 129 (1981), *abrogated on other grounds by McGanty*, 321 Or at 544, 901 P2d at 849.  Instead, [t]he tort requires some extraordinary transgression of the bounds of socially tolerable conduct." *Id*.  Oregon "cases suggest that conduct that is negligent, mistaken, or otherwise remiss rather than deliberate, intentional, or engaged in by design will not support a claim for IIED."  *Delaney v. Clifton*, 180 Or App 119, 136, 41 P3d 1099 1110, *review denied*, 334, Or 631, 54 P3d 1041 (2002) (citations omitted).

### 2. Analysis

This court previously held that the allegations in Larson's original Complaint were insufficient to satisfy the requirement that defendants' actions constituted a sufficiently extraordinary transgression of the bounds of socially tolerable conduct to proceed on her IIED claim.  The First Amended Complaint adds allegations that:  (1) Wyatt:  (a) repeatedly commented to Larson that he knew that she thought he was "hot" and that she "wanted his body" (First Amended Complaint, ¶ 13); (b) once commented to Larson that he was "going to have to have fellatio" if a certain coworker walked past him again (*id*); (c) would shut Larson in his office and "talk about sex and having sex;" and (d) requested Larson to proclaim that his belt buckle (or presumably some part of his anatomy close thereto) was "bigger" than that of Larson's husband (*id*, ¶ 17); (2) she repeatedly complained but got no response; and (3) managers to whom she complained agreed that Wyatt was a "horny guy" and a "pervert" who had "sexual problems" (*id*, ¶ 15-16) but nevertheless did nothing to solve the harassment by Wyatt toward her.[6]

---

[6] Larson also added an allegation that her employer was in a "special relationship" with her.  First Amended Complaint, ¶ 42.

15 - FINDINGS AND RECOMMENDATION

Despite these additional allegations, this court again concludes that Larson's allegations are insufficient as a matter of law to proceed on an IIED claim against the moving defendants. The essence of Larson's allegations has not changed. She continues to allege that Wyatt sexually harassed her and that the moving defendants, although sympathetic to her concerning Wyatt's behavior, did nothing to stop him. Wyatt's harassment included his repeated efforts to have Larson acknowledge that he was sexually desirable, talking to her about his physical attributes, telling her he knew she "wanted him," and shutting the door while she was in his office so that he could talk to her about sex and about having sex. These additional allegations simply reiterate a course of conduct directed at her by Wyatt that her supervisors ignored.

Although the allegations of overt sexual harassment committed by Wyatt may be sufficient to constitute intentional infliction of emotional distress, the allegations against the other defendants do not. At best, Larson alleges that, despite Larson's complaints, the moving defendants took no action against Wyatt. However, a mere failure to intervene does not rise to the level of an "extraordinary transgression" merely because of the employment relationship. For that reason, the Oregon Supreme Court dismissed a claim for intentional infliction of emotional distress against a father and owner of a business who "failed to respond to the problem" of his son's misconduct. *Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 628, 733 P2d 430 (1987); *see also* Findings and Recommendation (docket #13), pp. 8-12, adopted by Order (docket #20). Accordingly, this court concludes that defendants' motion to dismiss the Sixth Claim for Relief for IIED should be granted against the moving defendants.

As previously noted, Wyatt did not join the other defendants' motion to dismiss the IIED claim. Furthermore, as the person who allegedly made the repeated sexual comments to Larson,

he stands in quite a different position than the other defendants who allegedly did nothing to stop his behavior. Therefore, based on the current record, the IIED claim should not be dismissed against Wyatt.

///

## RECOMMENDATION

For the reasons stated above, defendants' Partial Motion to Dismiss the First Amended Complaint (docket #14) should be GRANTED WITH LEAVE TO AMEND. Accordingly, the First Claim for Relief should be dismissed with leave to replead in order to allege a due process violation against individual defendant(s) under § 1983. Larson also should be allowed to reallege a claim for wrongful termination against her employer, adding allegations concerning satisfaction of the applicable tort claims notice requirements. In addition, the Sixth Claim for Relief should be dismissed as to all defendants except Wyatt.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due **April 14, 2006.** If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 27th day of March, 2006.

             s/ Janice M. Stewart_____
             Janice M. Stewart
             United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION